IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | | |
|---|---|---|
| CALVIN D. ELIZARES, #A0114154 | ) ) ) | CIVIL NO. 06-00465 HG-LEK |
| Petitioner, | ) ) ) | FINDINGS AND RECOMMENDATION |
| vs. | ) ) | TO DENY PETITION FOR WRIT OF HABEAS CORPUS |
| ROBERT PARKER, Warden, et al., | ) ) ) | |
| Respondents. | ) ) | |

## **FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS**

Before the court is *pro se* Petitioner Calvin D. Elizares's petition for a writ of habeas corpus brought under 28 U.S.C. § 2254.  The Petition was referred to this court pursuant to Local Rule LR72.5 and 28 U.S.C. § 636(a).  Respondent filed an Answer to the Petition on December 14, 2006.  (Doc. No. 15.) Elizares filed his Reply on January 3, 2007.  After careful consideration of the Petition, Answer, Reply, and entire record before the court, the court FINDS that all claims in the Petition are either actually or technically exhausted, and RECOMMENDS that Ground One be DENIED, while Grounds Two through Seven are procedurally barred from federal review.  As such, the court Finds and Recommends that the Petition be DENIED with PREJUDICE.

## BACKGROUND AND PROCEDURAL HISTORY

On April 24, 2000, a jury in the Circuit Court of the Second Circuit (circuit court) convicted Elizares of: Counts One (Terrorist Threatening in the First Degree in violation of Hawai`i Revised Statutes (Haw. Rev. Stats.) § 707-716(1)(d)(1993)), Two & Eleven (Felon in Possession of a Firearm in violation of Haw. Rev. Stats. § 134-7(b)(Supp. 2001)), and Nine (Extortion in the First Degree in violation of Haw. Rev. Stats. § 707-765(1)(b) (1993)) in consolidated case Cr. No. 98-0463(2); and Counts One (Attempted Murder in the First Degree in violation of Haw. Rev. Stats. §§ 705-500(1993) & 707-701(a)(Supp. 2000), Two & Three (Kidnapping in violation of Haw. Rev. Stats. § 707-720(1)(d) and/or (e)(1993)), and Four & Five (Terroristic Threatening in the First Degree by use of a firearm in violation of Haw. Rev. Stats. § 707-716(1)(d)(1993)) in consolidated case Cr. No. 99-0076(2).[1]  The jury acquitted Elizares of Counts Six and Seven in Cr. No. 99-0076(2), involving Robbery in the First Degree.

During a motion in limine and prior to jury selection, the State informed the circuit court that it was prepared to prove that Elizares had prior convictions for Murder, Robbery,

---

[1] The facts related herein are taken from Elizares's Petition, Respondent's Answer and attached Exhibits, and from *State v. Elizares*, 54 P.3d 946, 99 Haw. 310 (Haw. App. 2002) (unpub.).

and Escape in the Second Degree, had reached a stipulation agreement to these convictions with the defense, and requested a stipulation stating that Elizares was convicted of a "felony crime of violence." (Resps.' Ex. ZZ.) Elizares was not present at the hearing on the matter. The circuit court denied the State's requested stipulation, ruling that the parties could only refer to Elizares's prior "felony" convictions. (Resps.' Ex. ZZ, 9-11.) Based on this, Elizares's attorney[2] and the State stipulated that (1) prior to July 26, 1998, Elizares had been convicted of committing a felony, and (2) prior to and on or about July 31, 1998, Elizares was aware that as a convicted felon he was prohibited from owning, possessing, or controlling any type of firearm. (Resps.' Ex. P, 111-12.) The jury was then empaneled, with strict admonitions that their verdict must be based strictly on the evidence presented at trial.

After the verdict was read, Elizares's attorney requested that the jury be polled. (Resps.' Ex. NNN, 8-11.) All of the jurors unanimously agreed with their verdict. (*Id.*)

On April 27, 2000, however, after the verdict was rendered but before sentencing or judgment were entered, the circuit court informed the parties that a juror, Mr. Morales Puha, during trial but prior to rendering a verdict, had

---

[2] Elizares was represented at trial and on appeal by Joseph R. Mottl III, Esq.

3

overheard that Elizares's earlier conviction was for murder. (Resps.' Ex. OOO, 5.)  Puha had not disclosed this information to the other jurors until after they rendered Elizares's guilty verdict.  Elizares's attorney immediately moved for a mistrial. (*Id.*)  The Motion was deferred and continued for further hearing.

On May 10, 2000, the circuit court held an evidentiary hearing on the matter.  During the hearing, three jurors, including Puha, Foreperson Gloria Tavares, and Nicole Amaral, testified.  Puha testified that, although he had inadvertently overheard during trial that Elizares had a prior conviction, and that the conviction was possibly for murder, he believed the information was only speculative, he did not allow that knowledge to prejudice his decision, and he did not relate this information to any other juror until after deliberations were final and the verdict was read.  (Resps.' Ex. QQQ, TR. 5/10/200 3-9.)  Tavares and Amaral testified that they were unaware of Puha's knowledge of Elizares's prior murder conviction until after the verdict was delivered.  (*Id.,* 9-13.)  On June 8, 2000, after considering the testimony presented at the hearing, the circuit court denied Elizares's motion for a new trial.  (Resps.' Ex. RRR, 18.)  He was sentenced on June 27, 2000, and judgment entered on June 28, 2000.

On July 26, 2000, Elizares filed a Notice of Appeal on Elizares's behalf.  (Resps.' Ex. X, 248-254.)  The sole issue

4

presented on appeal was that the circuit court erred by denying Elizares's motion for mistrial or a new trial.  (Resps.' Ex. Y, 27.)  Elizares contended that juror misconduct or bias deprived him of a fair trial guaranteed by the Sixth Amendment of the United States Constitution and article 1, section 14, of the Hawai`i Constitution, as well as deprived him of due process under both federal and state constitutions.  (Resp.'s Ex. Y, 30.)

On September 13, 2000, the Intermediate Court of Appeals (ICA) affirmed Elizares's conviction.  *State v. Elizares*, 54 P.3d 946, 99 Haw. 310 (Haw. App. 2002) (unpub.).

Thirty-one days later, on October 14, 2002, Mottl filed an application for writ of certiorari from the Hawai`i Supreme Court, which initially granted the petition on October 21, 2002, and later dismissed it as "improvidently granted" on November 29, 2003.[3]  (Resps.' Ex. EE.)  Elizares did not seek certiorari with the United States Supreme Court.

Approximately one year later, on December 26, 2003, Elizares, proceeding *pro se*, filed a post-conviction Petition to

---

[3] Although not explicit, it appears that the application was dismissed as untimely, as it was not filed within the thirty days allowed for seeking certiorari in Hawai`i. Haw. R. App. P. 40.1 ("No later than 30 days after the filing of an opinion, dispositional order, or ruling of the [ICA] . . . any party may apply in writing to the supreme court for a writ of certiorari to review such opinion[.]") If the supreme court's reason for dismissing the application had been specifically based on the untimeliness of the motion, the present Petition would likely have been time-barred pursuant to 28 U.S.C. § 2244(d)(1).

Vacate, Set Aside, or Correct Judgment or to Release Petitioner
From Custody under Rule 40 of the Hawai`i Rules of Penal
Procedure.  (Resps.' Ex. FF.)  Elizares raised ten main grounds
in this petition, each ground containing numerous subparts.  In
sum, Elizares claimed: (1) the circuit court erred by
consolidating his two criminal cases; (2) the state failed to
prove beyond a reasonable doubt Counts 1 & 2 of the Indictment in
Cr. No. 98-0463; (3) the testimony of one witness, Stephanie
Kaina-Kea was coerced; (4) the grand jury erred by consolidating
the offenses that allegedly occurred on July 26, 1998, with the
offenses that allegedly occurred on July 30-31, 1998; (5) the
trial judge committed various abuses of discretion during trial
(alleging fifteen separate abuses); (6) the State failed to
disclose discovery to Elizares; (7) prosecutorial misconduct
(alleging thirteen separate incidents of prosecutorial
misconduct); (8) the denial of due process; (9) the indictment
was impermissibly broadened; and (10) ineffective assistance of
trial and appellate counsel. (*Id.* 396-404.)  Elizares later
raised another claim, Ground Eleven, in his "Ex Parte Motion for
Petitioner's Second Additional Amendment," alleging that he never
signed the parties' stipulation to his prior felonies, and that
the agreement was therefore, fraudulent.  (Resps.'s Ex. GG, 413.)

On October 19, 2004, the circuit court denied the
petition in its entirety.  The circuit court first ruled on the

6

merits of Elizares's claims in Ground Ten, subparts 1 and 2, holding that his appellate counsel's failure to inform him for almost a year that the supreme court had dismissed his writ of certiorari did not amount to ineffective assistance of counsel. (Resps.'s Ex. MM, Conclusions of Law 3.)  The circuit court then held that Elizares's Ground Five, sections C, D, E, and L, and Ground 10, section 11, adding new bases for the juror misconduct that were not raised on direct appeal, were waived as previously ruled upon and procedurally barred under Haw. R. Penal P. 40(a)(3).[4] (*Id.*, Conclusions of Law 4.)  Finally, the court held that Elizares's remaining claims in Grounds One through Eleven, including all of their subparts not explicitly addressed, were knowingly and understandably waived on direct appeal and procedurally barred by Haw. R. Penal P. 40(a)(3).  (*Id.*, Conclusions of Law 6.)

---

[4] Rule 40(a)(3) states:

(3) *Inapplicability.*  Rule 40 proceedings shall not be available and relief thereunder shall not be granted where the issues sought to be raised have been previously ruled upon or were waived.  Except for a claim of illegal sentence, an issue is waived if the petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or in a prior proceeding actually initiated under this rule, and the petitioner is unable to prove the existence of extraordinary circumstances to justify the petitioner's failure to raise the issue.  There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure.

Elizares appealed, challenging the circuit court's Findings of Fact No. 5,[5] and Conclusions of Law Nos. 3, 4, and 6. (Resps.' Ex. PP, 715-718.)  Elizares argued that Conclusion of Fact 5 was clearly erroneous, that his prior convictions were improperly admitted by stipulation, and that this claim was not waived because he had raised it in his amendments to his Rule 40 petition.  (*Id.*, 719.)

Elizares argued that Conclusion of Law 3 was erroneous because his counsel failed to inform him for almost a year that the ICA had affirmed his conviction or that the Hawai`i Supreme Court had denied his application for certiorari.  Elizares argued that this failure constituted ineffective assistance of counsel because he was denied the opportunity to "exhaust his appeal." (Resps.'s Ex. PP, 723.)

Elizares claimed that Conclusion of Law 4 was erroneous because the trial court abused its discretion by failing to investigate the alleged juror misconduct and his counsel was

---

[5] The circuit court's Findings of Fact No. 5 states:

5.    Trial commenced on April 3, 2000.  On April 19, 2000, Petitioner and the State stipulated that (1) prior to July 26, 1998, Petitioner had been convicted of committing a felony, and (2) prior to and on or about July 26, 1998, through and including on or about July 31, 1998, Petitioner was aware that as a convicted felon he was prohibited from owning, possessing, or controlling any type of firearm.

(Resps.' Ex. MM, 684.)

ineffective for failing to call an unidentified law clerk to testify at the hearing on the motion for retrial.

Elizares argued that Conclusion of Law 6 was erroneous because he was unable to raise his claims previously as he had the same counsel at trial as on appeal.  Finally, Elizares argued that the circuit court erred by not holding an evidentiary hearing on his Rule 40 claims.

On May 23, 2006, the ICA denied Elizares's appeal by Summary Disposition Order (SDO).  The ICA held that: (1) Elizares failed to raise his allegedly fraudulent stipulation claim on direct appeal, and the claim was waived pursuant to Haw. R. Penal P. 40(a)(3); (2) Elizares failed to present his claims in Ground Five, sections C, D, E, and L, and in Ground Ten, subpart 11, raising additional bases for his claim of juror misconduct, on direct appeal, and these claims were also waived pursuant to Haw. R. Penal P. 40(a)(3); and (3) although the circuit court erred by holding that Elizares waived his ineffective assistance of counsel claims in Ground 10, because he had the same counsel at trial and on appeal, these claims were not colorable, and thus, the circuit court did not err by refusing to grant a hearing on his claims and denying his petition.  (Resps.' Ex. SS.)

On June 23, 2006, the Hawai`i Supreme Court denied Elizares's application for writ of certiorari.

Elizares filed the present Petition on August 28, 2006.
On September 26, 2006, he filed a document titled "Supplemental
Supporting Facts; Supplemental Appendix "8"–"15" (Supp.).
Neither document is a model of clarity.  Reading these two
documents together, however, the court discerns Elizares's claims
as follows:

Ground One: The circuit court erred by denying his motion for mistrial or a new trial;

Ground Two: Ineffective assistance of <u>appellate counsel</u>, when counsel omitted the following issues on direct appeal:

 1) Violation of his "[r]ight to an (sic) fair and impartial grand jury panel as guaranteed by the 5th, 14th Const. Amend.," when the State introduced evidence of his prior criminal history before the grand jury (Supp., 2);

 2) Violation of his "[r]ight to confront and cross-examine witnesses [Brian Wong] as guaranteed by the 5th, 6th, and 14th [] Amendment," (Supp., 2);

 3) Violation of his "[r]ight to a fair trial as guaranteed by the 5th, 14th, [] Amend.", when the trial court failed to sever Petitioner's cases (Supp., 3);

Ground Three: Ineffective Assistance of <u>trial counsel</u> when counsel failed to challenge allegedly erroneous jury instructions;

Ground Four: Ineffective Assistance of <u>trial counsel</u> when counsel failed to:

 1) "[o]bject to special interrogatories when state admitted that they did not prove injuries", (Pet., 11; Supp., 3);

       2)     "[m]ove court for motion to acquit", where the "conviction [was] obtained on less than proof beyond a reasonable doubt", (Pet., 11);

Ground Five:   Ineffective Assistance of <u>trial counsel</u> when counsel failed to:

       1)     "protect [his] fundamental right to a unanimous jury verdict," (Pet., 17; Supp., 3);

       2)     "failed to inform trial court to have jury reconsider answers and verdict," (Pet., 17);

       3)     "failed to move court for a new trial," (Pet., 17);

       4)     "failed to object to judgment entered," (Pet., 17);

       5)     failed to raise an issue that the verdict was inconsistent in ct. 2, 99-0076(2), (Supp., 3);

Ground Six:   Ineffective Assistance of <u>trial counsel</u> when counsel failed to investigate potential witnesses' possible testimony;

Ground Seven:   Ineffective Assistance of <u>trial counsel</u> when counsel:

       1)     "usurped [his] right to have every element of the crime proven beyond a reasonable doubt by way of invalid stipulation;" (Pet., 19);

       2)     "failed to inform [him] of stipulation and proceedings;" (Pet., 19);

       3)     "failed to acquire [his] signature [on the stipulation];" (Pet., 19, Supp., 4);

       4)     "failed to object to trial court's failure to conduct 'colloquy [during stipulation hearing];'" (Pet., at 19);

5)    "failed to object to State's failure to
       lay proper foundation to enter secondary
       evidence [supporting the stipulation,
       regarding Elizares's prior
       convictions];" (Pet., at 19);

6)    "failed to object to erroneous
       admittance of evidence [i.e., the
       stipulation] to prove status as a
       felon[.]" (Pet., at 19);

### LEGAL STANDARD

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may only overturn a state court's judgment if it "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Before a petitioner may bring a habeas petition to federal court, however, all of the claims raised must be exhausted in the state courts. 28 U.S.C. § 2254(b)(1)(A); *Picard v. Connor*, 404 U.S. 270, 275 (1971). To do so, a petitioner must present his claims to the highest state court, to give that court a fair opportunity to rule on the merits of each and every issue sought to be raised in the federal court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 839-40 (1999); *Granberry v. Greer*, 481 U.S. 129, 133-34 (1987); *Galvan v. Alaska Dep't of Corr.*, 397

F.3d 1198, 1201-02 (9th Cir. 2005). A petitioner may present his claims either on direct appeal or in state collateral proceedings. *See Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987).

There are two ways that exhaustion may be accomplished. First, a petitioner may *actually* exhaust his claims by presenting them in a proper procedural manner to the state courts. To fully exhaust federal claims in the state court, petitioners must alert, or "fairly present" their claims as federal as well as state claims. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995)); *Fields v. Waddington*, 401 F.3d 1018, 1020 (9th Cir. 2005); *Lyons v. Crawford*, 232 F.3d 666, 668 (9th Cir. 2000), *as modified by* 247 F.3d 904 (9th Cir. 2001). A petitioner must make the federal basis of his claim explicit, either by referring to specific provisions of the federal constitution or statutes, or citing to federal case law. *Lyons*, 232 F.3d at 668, 670. This "give[s] the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[,]" in the first instance. *Duncan*, 513 U.S. at 365.

Ordinarily, to "fairly present" federal claims to a state court, the federal issues must be clearly identified as such in the state court brief presented to that specific court. *Baldwin*, 541 U.S. at 32. Moreover, a prisoner must "'fairly

13

present' his claim *in each appropriate state court* (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* at 27-28 (internal quotation marks and citations omitted) (emphasis added); *Casey v. Moore*, 386 F.3d 896, 914 (9th Cir. 2004) (accord); *Ortberg v. Moody*, 961 F.2d 135, 137 (9th Cir. 1991) (holding that petition was properly dismissed because five of six claims were not presented at every level of direct review). The state appellate court is not required to read the lower court's opinion or the briefing below to determine whether a federal question has been raised. *Id.* Moreover, it is not enough to make a general appeal to a constitutional guarantee such as "due process" or "equal protection." *Gray v. Netherland,* 518 U.S. 152, 163 (1996). Exhaustion demands more than a citation to a general constitutional provision, "detached from any articulation of the underlying federal legal theory." *Castillo v. McFadden*, 399 F.3d 993, 1003 (9th Cir. 2005).

A petitioner can also *technically* exhaust state remedies by either showing that the state court explicitly denied a claim on procedural grounds, or, if the claim was never presented to the state courts, that no state remedies remain available. *Cassett v. Stewart*, 406 F.3d 614, 621 n.5 (9th Cir. 2005), *cert. denied by*, *Schriro v. Cassett*, --- U.S. ----, 126 S. Ct. 1336 (2006) ("[T]he procedural default rule . . . applies

14

. . . when a state court has been presented with the federal claim, but declined to reach the issue for procedural reasons, or if it is clear that the state court would hold the claim procedurally barred.") (citing *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002)(internal quotation marks and citations omitted)); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002).

A state court's application of a procedural bar effectively exhausts the claim because "no state remedies remain available." *Kellotat v. Cupp*, 719 F.2d 1027, 1029 (9th Cir. 1983) (citing *Batchelor v. Cupp*, 693 F.2d 859, 862 (9th Cir. 1982)). "Because the exhaustion requirement refers only to remedies still available at the time of the federal petition, if a petitioner failed to present his claims in state court and can no longer raise them through any state procedure, state remedies are no longer available and are exhausted." *Rivas v. Schriro*, No. CV-05-434-PHX-DGC (BPV), 2006 WL 987990, at *8 (D. Ariz., April 13, 2006) (citations omitted). Thus, "a procedural default may be *caused* by a failure to exhaust federal claims in state court." *Sandgathe v. Maass*, 314 F.3d 371, 376 (9th Cir. 2002)(emphasis in original) (citing *O'Sullivan*, 526 U.S. at 848 (stating that the failure to timely present three federal claims to the state supreme court resulted in the procedural default of those claims).

Procedural default arises because, pursuant to a state court's procedural rules, a return to state court to exhaust the claims would be futile. *Teague v. Lane*, 489 U.S. 288, 297–99 (1989); *Coleman*, 501 U.S. at 735 n.1 (stating that a claim is procedurally defaulted when "the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.").

**DISCUSSION**

I.   <u>The Petition is Exhausted.</u>

Respondent argues that all of Elizares's claims are invalid and must be denied. First, Respondent argues that Ground One of the Petition, although fully exhausted, is without merit. Next, Respondent argues that Grounds Two through Seven are unexhausted and procedurally defaulted at the state court and therefore barred from review by this court. Finally, Respondent argues that, even if Grounds Two through Seven are not procedurally barred from federal review, they are meritless. The court agrees in substance, but finds, however, that Grounds Two through Seven are technically exhausted, based on Elizares's procedural default of these claims at the state court, and are now barred from federal review.

16

A.   Ground One is "Actually" Exhausted.

Ground One, Elizares's claim that his right to an impartial jury as guaranteed under the United States Constitution was violated by juror misconduct or bias, is the same claim that Elizares raised on direct appeal.  A careful review of Elizares's briefs in his motion for a new trial and on direct appeal reveal that this claim was fairly presented as a federal and state law claim to the Hawai`i courts, including to the Hawai`i Supreme Court.  This claim is therefore exhausted.  The court will discuss the merits of this claim *infra*, section III.

B.   Grounds Two Through Seven are "Technically" Exhausted.

Elizares's remaining claims in Grounds Two through Seven, alleging ineffective assistance of either trial or appellate counsel, were not, however, fairly presented to the Hawai`i state courts.  Although the ICA held that Elizares's claims of ineffective assistance of counsel were not waived on direct appeal, because he had the same attorney at trial as on appeal, and thus, did not have a meaningful opportunity to raise such claims,[6] Elizares's briefs in his Rule 40 proceeding reveal that he never fairly presented his ineffective assistance of counsel claims to each state court as federal claims.

---

[6] *See Briones v. State*, 848 P.2d 966, 975 (Haw. 1993)("Where petitioner has been represented by the same counsel both at trial and on direct appeal, no waiver of the issue of trial counsel's performance occurs because no realistic opportunity existed to raise the issue on direct appeal.").

17

        In his Rule 40 Petition and supplemental memoranda,

Elizares cited to neither state nor federal law in support of his

ineffective assistance of counsel claims.  (*See* Resps.' Exs. FF,

GG, & HH.)  He simply argued the factual bases that he believed

supported his claims.  In his Reply to the State's answering

brief, however, he did cite to the Sixth Amendment to the United

States Constitution in support of his ineffective assistance

claims.  (*See* Resps.'s Ex. LL, 577.)  When he later specifically

argued this claim, however, he referred only to Hawai`i's two-

part test for reviewing ineffective assistance claims.[7]  (*See*

Resps.' Ex. LL, 586-90.)  The circuit court did not analyze

Elizares's claims under federal law, or refer to federal law in

its Order denying the Rule 40 petition, apparently because it

deemed the claims waived under Rule 40(a)(3).

        In his Opening Brief to the ICA, Elizares relied solely

on state law in support of his claims for ineffective assistance

of counsel.[8]  (*See* Resps.'s Ex. PP.)  The Opening Brief provides

no citation of any case that might have alerted the ICA to the

alleged federal nature of his ineffective assistance claims.

While Elizares does state that his counsel was "constitutionally

───────────────

        [7] Elizares cited to *State v. Fukusaku*, 946 P.2d 32 (1997),
as his "Standard of Review" for his ineffective assistance
claims.

        [8] Elizares relied upon *Fukusaku*, *Briones*, and *State v.
Edwards*, 916 P.2d 703, 710 (1996) in support of his ineffective
assistance of counsel claims. (Resps.'s Ex. PP, 732-35.)

ineffective," he immediately cites to *Briones*, suggesting that he is speaking of the Hawai`i constitution. (*Id.,* 723.)  Elizares also broadly mentions the United States Constitution several times in his Opening Brief, but he does so in conjunction with his argument that the cumulative weight of the alleged errors at his trial and on appeal deprived him of a fair trial and due process in violation of the Fifth, Sixth, and Fourteenth Amendments, not with his ineffective assistance of counsel argument. (Resps.'s Ex. PP, 734-35.)  Additionally, immediately before this statement he refers to *State v. Napeahi*, 556 P.2d 568 (Haw. 1976), and immediately after immediately, he reargues that his counsel was constitutionally ineffective under *Briones*. (*Id.,* 734-35.)

The two-part test to establish an ineffective assistance of counsel claim in Hawai`i is: "(1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment or diligence; and (2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense." *Fukusaku*, 946 P.2d at 593 (quotations omitted).  Whether a defense is potentially meritorious "requires an evaluation of the possible, *rather than the probable*, effect of the defense on the decision maker . . . no showing of 'actual' prejudice is required[.]" *Id.* (*quoting Dan v. State*, 879 P.2d 528, 532 (1994)(emphasis added)).  In his

"Standard of Review" relating to his ineffective assistance claim, Elizares cites solely to this two-part test and to the state law cases explicating it.  (*See* Resps.' Ex. PP, 732-33.)

In contrast, the federal test for ineffective assistance of counsel requires a showing that "counsel's representation fell below an objective standard of reasonableness" and that "there is a *reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984) (emphasis added); *Raley v. Ylst*, 444 F.3d 1085, 1090 (9th Cir. 2006).  First, the defendant must show that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance *actually prejudiced* the defense.  *Strickland*, 466 U.S. at 687. The federal test clearly requires a showing of the "probable effects" of counsel's allegedly deficient performance and actual prejudice, an explicitly more stringent standard than that required in Hawai`i.

This fundamental difference is highlighted in *Briones*, which Elizares cites repeatedly in support of his ineffective assistance claims, when the Hawai`i Supreme Court reiterated that it had explicitly rejected the "unduly burdensome" federal

standard of review in such cases, holding that actual prejudice is not required to prove ineffective assistance of counsel claims in Hawai`i. *Briones*, 848 P.2d 966 at 977 n.12. Hawai`i's standard for ineffective assistance of counsel is clearly more lenient than the federal standard. *State v. Antone*, 615 P.2d 101, 104 (1980) ("In assessing claims of ineffective assistance of counsel, the applicable standard is whether, viewed as a whole, the assistance provided [was] within the range of competence demanded of attorneys in criminal cases." (citation omitted)).

On appeal, the ICA held that Elizares's ineffective assistance of counsel claims, while not previously waived, were simply not "colorable," even under Hawai`i's more lenient standard of review, and affirmed the circuit courts' decision to deny an evidentiary hearing on the claims. (Resps.'s Ex. SS, 856.) Moreover, although Elizares obliquely argued in his Reply to the *circuit court* that his ineffective assistance of counsel claims also arose under the Sixth Amendment, he did not do so to the ICA. The ICA is not required to read the briefs presented to the lower courts, or even the lower court's opinion to determine the full basis for a petitioner's claims. *Baldwin*, 541 U.S. at 27-28. The petitioner must "fairly present" his claim to each appropriate court. *Id.*; *Casey*, 386 F.3d at 914. Thus, Elizares's ineffective assistance claims were never fairly

21

presented to the ICA as federal claims.

II.  <u>Grounds Two Through Seven are Procedurally Barred.</u>

  The question now becomes, whether Elizares has procedurally defaulted his ineffective assistance of counsel claims at the Hawai`i courts, precluding this court from reviewing those claims?  The court finds that he has.

  A.  <u>Rule 40(a)(3) is Independent and Adequate.</u>

  As discussed *supra* n.4, under Hawai`i law, state prisoners are precluded from filing petitions for post-conviction relief if the issue was either previously ruled upon or was "knowingly and understandingly" waived by the failure to raise it before trial, at trial, on appeal, or by any other means, and there are no "extraordinary circumstances" justifying the failure to raise the issue.  Haw. R. Penal P. 40(a)(3); *State v. Ng*, 93 P.3d 1181, 1184-85 (Haw. Ct. App. 2004) (holding that petitioner's ineffective assistance claims were procedurally barred under Rule 40(a)(3)).

  When a petitioner defaults his federal claim in state court pursuant to an "independent and adequate" state rule, federal habeas review on the merits is barred.  *Coleman*, 501 U.S. at 722-23; *Wainwright v. Sykes*, 433 U.S. 72, 81, 87 (1977); *Cockett v. Ray*, 333 F.3d 938, 943 (9th Cir. 2003) (finding that Hawai`i's Rule 40(a)(3) is well-established and consistently applied, and therefore, an adequate and independent ground

sufficient to support a finding of procedural default).

Rule 40 is independent of federal law, firmly established, and has been regularly followed since long before Elizares was convicted and after.  *See, e.g.*, *Ng*, 93 P.3d at 1184-85; *Adams v. State*, 81 P.3d 394, 400-01 (2003); *Fragiao v. State*, 18 P.3d 871, 877-79 (2001); *Tachibana v. State*, 900 P.2d 1293, 1299 (1995).  Each of these cases examined Rule 40(a)(3), and upheld waiver of the claim where appropriate.

Here, Elizares's ineffective assistance of counsel claims would be deemed waived if he were now to bring them back to the Hawai`i state courts as federal claims.  This is clear not only from the consistency with which Hawai`i has applied Rule 40(a)(3), but also from both the circuit court's and the ICA's explicit reliance on Rule 40(a)(3) in their separate opinions denying Elizares's other claims as procedurally defaulted. (*See* Resps.'s Exs. MM, 687-88 & SS, 855-56.)  Having found that Elizares's ineffective assistance were not even colorable under state law, it is doubtful the state court would welcome a new petition raising the same claims based on the more stringent federal law.  The court finds that Elizares's claims in Grounds Two through Seven are procedurally defaulted in the state court.

B.   Procedural Bar in Federal Court.

When a state prisoner has procedurally defaulted his federal claims in state court, federal habeas review is precluded

23

unless the prisoner can demonstrate cause for the procedural default and actual prejudice, or demonstrate that the failure to consider the claims will result in the fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Cockett*, 333 F.3d at 943. To establish cause, a petitioner must establish that "some objective factor external to the defense impeded [his efforts] to comply with the State's procedural rule." *Carrier*, 477 U.S. at 488-89 (examples include the unavailability to counsel of a factual or a legal basis for the claim, interference by state officials, or constitutionally ineffective assistance of counsel). Prejudice is proved by demonstrating that the alleged constitutional violation "worked to [a petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). If a petitioner fails to establish cause for his procedural default, the court need not consider whether petitioner has shown actual prejudice resulting from the alleged constitutional violations. *Smith v. Murray*, 477 U.S. 527, 533 (1986).

Although Elizares claims that, because his attorney delayed informing him that because his direct appeal was concluded, he was prevented from "exhaust[ing] his appeal," he is incorrect. Elizares's claims on direct appeal were exhausted

when the Hawai`i Supreme Court denied certiorari.  Additionally, Elizares was able to file a Rule 40 Petition which, if properly presented, could have fully exhausted his claims of ineffective assistance of counsel.  His attorney's delay in informing Elizares of the status of his direct appeal did not prevent Elizares from raising federal ineffective assistance of counsel claims in his timely filed Rule 40 Petition.

Elizares cannot claim State interference for his failure to fairly present his claims, as he was clearly able to file his Rule 40 Petition as well as two supplements to the Petition.  (Resps.' Exs. II & JJ.)  He also could have raised his federal claims to the ICA but did not.  At any of these junctures he could have raised federal issues.  Nor does he allege that any other objective external factor prevented him from raising the federal bases of his claims in his Rule 40 Petition.

It is also clear that he did not default because new factual or legal issues were unavailable to him when he brought his Rule 40 Petition.  Each of the alleged instances of ineffective assistance of counsel stem from Elizares's claims of *trial* errors that his attorney allegedly failed to raise at trial or on appeal.  Therefore, Elizares was aware of these issues prior to filing his Rule 40 Petition.  Moreover, because Elizares himself failed to fairly present his ineffective assistance of counsel claims as federal claims, he may not use these claims to

establish cause for a procedural default in a federal habeas proceeding. *Carrier*, 477 U.S. at 488-89; *Eisermann v. Penarosa*, 33 F. Supp. 2d 1269, 1275 (D. Haw. 1999). For federal court review, the ineffective assistance of counsel claims must also have been exhausted. Elizares has failed to establish cause for his procedural default, and the court need not consider the issue of prejudice.

Elizares also fails to establish that his claims require federal review to prevent a fundamental miscarriage of justice. This exception "applies only when a constitutional violation probably has resulted in the conviction of one actually innocent of a crime and petitioner supplements his constitutional claim with a colorable showing of factual innocence[.]" *Casey v. Moore*, 386 F.3d 896, 921 n.27 (9th Cir. 2004). To establish actual innocence a petitioner must establish that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of new evidence. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); 28 U.S.C. § 2254(c)(2)(B); *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) ("[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence . . . . Given the rarity of [reliable] evidence [of actual innocence], in virtually every case, the allegation of actual innocence has been summarily rejected.") (internal quotation marks and citations omitted).

First, many of Elizares's claims of ineffective assistance are clearly frivolous.  He claims that his attorney failed to move for acquittal, object to the judgment, or move for a new trial.  (Pet. Grounds Four & Five.)  This is astonishing in that the trial court held an evidentiary hearing on Mr. Mottl's oral motion for a new trial, and Mr. Mottl appealed the verdict, obviously objecting to the judgment.  He claims that Mr. Mottl failed to protect his "fundamental right to a unanimous jury," or to require the court to direct the jury to reconsider their verdict.  (Ground Five.)  In clear contrast to this statement, the trial court repeatedly informed the jury that their verdict must be unanimous and Mr. Mottl polled the jury to determine unanimity.  As to requiring the jury to "reconsider" their verdict, there is no requirement of which this court is aware requiring a jury to reconsider their verdict at defense counsel's behest.

Second, Elizares's claims regarding the admittance of evidence of his prior convictions are without merit.  Elizares broadly protests the introduction of his prior convictions to the Grand Jury in Ground Two, and to the stipulation to his prior convictions at trial in Ground Seven.  Neither the Hawai`i Rules of Evidence nor the Federal Rules bar evidence of prior convictions if the evidence is not introduced to prove character, but only to prove the elements of the case, i.e., that Elizares

was a felon in possession of a gun.  *See* Fed. R. Evid. 403 & 404;
Haw. R. Evid. 403 & 404.  Such evidence is relevant and not
unduly prejudicial.  Nor is this type of evidence otherwise
barred, if it is not introduced to impeach the defendant.  Fed.
R. Evid. 609; Haw. R. Evid. 608 & 609.  Even if his prior
convictions were introduced for impeachment, Federal Rule
609(a)(1) allows impeachment by evidence of a prior conviction
"if the crime was punishable by . . . imprisonment in excess of
one year . . . ."

Moreover, the trial transcripts reveal that Elizares
admitted to being a convicted felon several times in his
testimony, as an excuse for his failure to alert the police to
the kidnapping and attempted murders, for which he alleged
Brian Wong was guilty.  (Resps.' Ex. KKK, TR 04/19/2000, at 25,
40.) Any prejudice from the stipulation was therefore harmless.

Most importantly, all of Elizares's claims, even if
true, are claims of legal, not actual innocence.  Elizares has
not established that it is more likely than not that no
reasonable juror would have found him guilty based on his claims
of attorney error.  *Schlup*, 513 U.S. at 327.  As such, the court
FINDS that Elizares is procedurally barred from federal review of
Grounds Two through Seven, and RECOMMENDS these claims be Denied.

III. <u>Ground One is Without Merit.</u>

Elizares maintains that the trial court erred by denying his motion for a new trial when it was revealed that juror Puha inadvertently overheard information relating to Elizares's prior murder conviction.  (Pet. 6.)  Elizares claims that his right to an impartial jury, as guaranteed by the Sixth Amendment, was violated by Puha's alleged juror misconduct.  In support of his claim, Elizares cites *Smith v. Phillips*, 455 U.S. 209 (1982).

Elizares does not distinguish whether his claim is raised under § 2254(d)(1), as contrary to, or an unreasonable application of, clearly established Supreme Court law, or under § 2254(d)(2), as involving an unreasonable determination of the facts in light of the evidence presented to the state court. Under either application his claim fails.

A.   28 U.S.C. § 2254(d)(1).

"The threshold question under AEDPA is whether [petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final." *Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Under subsection (d)(1), the court must first identify the "clearly established Federal law," if any, that governs the sufficiency of the claims on habeas review.  "Clearly established" federal law consists of the holdings of the Supreme Court at the time the petitioner's state court conviction became final.  *Williams*, 529 U.S. at 365;

*see Musladin v. Lamarque*, 427 F.3d 653, 655 (9th Cir. 2005) ("AEDPA limits the source of clearly-established federal law to Supreme Court cases"), *overruled on other grounds by Carey v. Musladin*, 127 S. Ct. 649, (2006); *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003). Habeas relief cannot be granted if the Supreme Court has not "broken sufficient legal ground" on a constitutional principle advanced by a petitioner, even if lower federal courts have decided the issue. *Williams*, 529 U.S. at 381. Nevertheless, while only Supreme Court authority is binding, circuit court precedent may be of "persuasive value" in determining what law is clearly established and whether a state court applied that law unreasonably. *Musladin*, 427 F.3d at 655 (collecting cases); *see Clark*, 331 F.3d at 1069.

A state court decision is contrary to established Supreme Court precedent if the decision applies a rule that contradicts the law set forth in those precedents, and reaches a conclusion opposite to that reached by the Supreme Court on a matter of law, or, on facts that are materially indistinguishable from those found by the Supreme Court, reaches a different result. *Williams*, 529 U.S. at 405-06; *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam).

Under the "unreasonable application" prong of § 2254(d)(1), when a state court decision "identifies the correct governing legal rule from [the Supreme] Court's cases but

unreasonably applies it to the facts of the particular case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply[,]" the federal habeas court may grant the writ. *Williams*, 529 U.S. at 407.

B.    28 U.S.C. § 2254(d)(2).

Under § 2254(d)(2), habeas relief shall not be granted unless the state court decision was based upon an unreasonable determination of the facts. *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (Miller-El II).  A federal court will not overturn a state court decision based on a factual determination unless that determination was "objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (Miller-El I).  State court determinations of fact are presumed to be correct, and the petitioner bears the "burden of rebutting this presumption by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Miller-El II*, 545 U.S. at 240.

C.    Elizares's Right to Fair Trial was not Violated.

A criminal defendant is entitled to "a fair trial by a panel of impartial, 'indifferent' jurors," and the verdict must be based solely on evidence properly presented at trial. *Irvin v. Dowd*, 366 U.S. 717, 722 (1961) (finding actual prejudice due

to juror bias) (quoting *In re Oliver*, 333 U.S. 257 (1948)).  The Constitution, however, "does not require a new trial every time a juror has been placed in a potentially compromising situation." *Smith*, 455 U.S. at 217.  "Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen."  *Smith*, 455 U.S. at 216; *see also McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 554 (1984) ("One touchstone of a fair trial is an impartial trier of fact[.]"); *Fields v. Brown*, 431 F.3d 1186, 1192 (9th Cir. 2005).

Even if only one juror is biased or prejudiced, a defendant is denied the right to an impartial jury.  *Dyer v. Calderon*, 151 F.3d 970, 973 (9th Cir. 1998) (*en banc*).  A juror's exposure to information about a state defendant's prior convictions, however, is not *presumptively* prejudicial evidence of the deprivation of due process.[9]  *Murphy v. Florida*, 421 U.S.

---

[9] The Ninth Circuit Court of Appeals permits defendants alleging juror partiality to proceed on theories of actual or implied bias. *United States v. Plache*, 913 F.2d 1375, 1378 (9th Cir. 1990).  Nonetheless, bias may be implied only in exceptional circumstances.  *United States v. Gonzalez*, 214 F.3d 1109, 1112 (9th Cir. 2000); *McDonough*, 464 U.S. at 556–57 (1984) (Blackmun, J., concurring) (citing *Smith*, 455 U.S. 209, 215–16). The Ninth Circuit has implied bias where (1) a juror has prejudicial information about the defendant; (2) a juror has a personal connection to the defendant, victim, or witnesses; or (3) a juror or a close relative of the juror has been involved in a situation involving similar facts. *Coughlin v. Tailhook Ass'n*, 112 F.3d
(continued...)

794, 799 (1975) (stating that the Court's earlier precedent "cannot be made to stand for the proposition that juror exposure to information about a state defendant's prior convictions . . . presumptively deprives the defendant of due process."); *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 565 (1976) (noting that "pretrial publicity, even if pervasive and concentrated, cannot be regarded as leading automatically and in every kind of criminal case to an unfair trial."). The petitioner challenging a juror bears the burden and "[u]nless he shows the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality, the juror need not necessarily be set aside." *Irvin*, 366 U.S. at 723.

In *Smith*, the Court held that a state trial court's post-trial hearing on an allegation of juror bias was sufficient to comply with the requirements of due process. 455 U.S. at 215 ("This Court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the

---

[9](...continued)
1052, 1062 (9th Cir. 1997); *see also Dyer v. Calderon*, 151 F.3d 970, 973 (9th Cir. 1998) (*en banc*) (implying bias from juror's pattern of lying about similar crime perpetrated against her relative). Extreme instances of juror deception may also result in a finding of implied bias. *Green v. White*, 232 F.3d 671, 677-78 (9th Cir. 2000) (implying bias from juror's excessive, deliberate lies). These cases are not dispositive for this habeas petition, however, as they are not Supreme Court decisions, and thus, cannot be used to determine whether the state court acted contrarily to or unreasonably applied Supreme Court precedent.

33

opportunity to prove actual bias."); *see also Remmer v. United States*, 347 U.S. 227 (1954) (on allegations of possible juror bias known only to the State and the trial court, the Court remanded to the district court for a hearing in which all parties could participate).  The Court observed that "if in the federal system a post-trial hearing such as that conducted here is sufficient to decide allegations of juror partiality, the Due Process Clause of the Fourteenth Amendment cannot possibly require more of a state court system."  *Smith,* 455 U.S. at 218.[10]

Here, when the circuit court became aware that Puha had overheard information relating to Elizares's prior murder conviction, it determined that Elizares's claim of the deprivation of an impartial jury arose to the level of substantial prejudice, raising a rebuttable presumption of prejudice.  *See Furutani*, 873 P.2d at 58.  Accordingly, the trial judge investigated the allegations through a post-trial hearing as required under state law.  *See id.* at 59-60.[11]  Thus, the

---

[10] The Ninth Circuit Court of Appeals has not interpreted *Smith* and *Remmer* to stand for the proposition that a hearing is required in every case of alleged juror bias, but rather, as a "flexible rule" dependant on the circumstances of the alleged juror bias, partiality, or misconduct.  *Tracey v. Palmateer*, 341 F.3d 1037, 1044-45 (9th Cir. 2003); *Sims v. Rowland*, 414 F.3d 1148, 1155 (9th Cir. 2005).

[11] *Furutani* holds that, once the trial court determines that defendant's claimed error arises to the level of substantial prejudice, the judge is duty bound to investigate the totality of circumstances to determine whether the alleged deprivation is
(continued...)

state court acted in compliance with the clearly established Supreme Court precedent set forth in *Smith*.  Elizares had the opportunity to prove Puha's bias at this hearing when Puha and two other jurors were extensively questioned by the court, the prosecutor, and by his own attorney.  (*See* Resps.' Ex. QQQ, TR 05/10/2000.)

After carefully considering the testimony and briefs, the trial judge determined that there was substantial evidence adduced at trial that Elizares was a convicted felon, although the nature of that felony was not discussed, and that the evidence of Elizares's guilt was very strong.  The court found particularly probative the fact that eleven jurors, who had no knowledge of the nature of the prior conviction, voted to convict Elizares.  The circuit court also found that a juror may always learn something about the case, which is why the court admonishes jurors to disregard any extraneous evidence, and that there is a presumption that jurors follow the court's instructions and do disregard such evidence.  The judge believed Puha's testimony that he carefully followed this direction, particularly in light of the fact that Puha, despite his knowledge of the nature of Puha's prior conviction, voted to acquit Elizares on two Robbery charges.  (Resps.'s Ex. RRR, 16-17.)

---

[11](...continued)
harmless beyond a reasonable doubt. 873 P.2d at 59-60.

The circuit court then held that "the disclosure to the subject juror by a co-worker that Elizares may have had a prior murder conviction had been proven harmless *beyond a reasonable doubt*," overcoming the presumption of prejudice, either implied or actual, and denied the motion for new trial. *(Id.* at 18.); *see Smith*, 455 U.S. at 211 (discussing with approval, and upholding, the state court's "opinion concluding 'beyond a reasonable doubt' that the events giving rise to the motion did not influence the verdict."). The ICA, giving deference to the factual considerations of the circuit court and the legal requirements set forth in *Furutani*, affirmed.

There is no Supreme Court precedent explicitly detailing what factors a court must consider to determine juror bias. Ninth Circuit precedent, however, sets forth several factors that the court should consider when determining juror bias as a result of the introduction of extraneous information. They include:

> (1) whether the extrinsic material was actually received [by the jury], and if so, how; (2) the length of time it was available to the jury; (3) the extent to which the jury discussed and considered it; (4) whether the extrinsic material was introduced before a verdict was reached, and if so, at what point in the deliberations it was introduced; and (5) any other matters which may bear on the issue of the reasonable possibility of whether the introduction of extrinsic material affected the verdict.

*Bayramoglu v. Estelle*, 806 F.2d 880, 887 (9th Cir. 1986)

36

(citations omitted).  The Ninth Circuit emphasizes that while these factors are instructive, "none should be considered dispositive."  *Jeffries v. Blodgett*, 5 F.3d 1180, 1190 (9th Cir. 1993).[12]  The question is "whether it can be concluded beyond a reasonable doubt that extrinsic evidence did not contribute to the verdict."  *Bayramoglu*, 806 F.2d at 887 (internal quotations omitted).  "Only in 'extreme' or 'extraordinary' cases should bias be presumed."  *Tinsley v. Borg*, 895 F.2d 520, 527 (9th Cir. 1990) (quoting *Smith*, 455 U.S. at 223 n.27 (1982)).

Clearly, the circuit court considered these factors. It determined that Puha inadvertently overheard the information during trial and prior to deliberations, and did not discuss it with the other jurors.  The circuit court accordingly found that there was no juror misconduct.  The circuit court also found that

---

[12] *Jeffries*, which was decided prior to the AEDPA, concluded that extraneous information about the defendant's prior convictions would have had a "substantial and injurious effect or influence" on the verdict, and remanded the habeas petition to the district court for a factual determination on whether the information had, in fact, been communicated to one or more of the jurors.  *Jeffries*, 5 F.3d at 1191 (quoting *Brecht v. Abrahamson,* 507 U.S. 619 (1993)); *see also Dickson v. Sullivan*, 849 F.2d 403, 408 (9th Cir. 1988) (finding it "impossible" to conclude that exposure of one or more jurors to highly prejudicial information regarding the defendant's prior criminal acts was harmless beyond a reasonable doubt.").  If the district court determined that the extraneous information about the defendant's prior convictions was communicated, bias would be implied. The Supreme Court, however, has never explicitly adopted or rejected the doctrine of implied bias, on any basis, and therefore, the state court's finding here, that there was neither actual nor implied bias, although possibly contrary to Ninth Circuit precedent, does not conflict with Supreme Court caselaw.

Puha was able to set aside this information when rendering the verdict.  Moreover, the court determined that other factors, such as the jury's knowledge that Elizares was a felon, the testimony at trial, and the overwhelming evidence of guilt, assured that Puha' knowledge of extrinsic evidence did not affect the verdict. After careful investigation, the circuit court held that Puha was neither actually nor impliedly prejudiced against Elizares.

This court FINDS that the state courts' decisions were neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent, as set forth in *Smith* and *Murphy*, and thus, relief is not warranted under § 2254(d)(1). Further, the circuit court's determination of the facts underpinning Puha's credibility was not an unreasonable determination of the facts in light of the evidence presented at the hearing, and relief is not available under § 2254(d)(2).  The court RECOMMENDS, therefore, that Ground One be DENIED.

**CONCLUSION**

Based on the foregoing, this court FINDS that all claims in the Petition are either actually or technically exhausted; that Grounds Two through Seven are procedurally defaulted in the state courts and procedurally barred from review by this court; and that Ground One is without merit. Accordingly, the court RECOMMENDS that the Petition be DENIED with prejudice.

38

IT IS SO FOUND AND RECOMMENDED.

DATED AT HONOLULU, HAWAI`I, January 26, 2007.



                         /S/ Leslie E. Kobayashi
                         Leslie E. Kobayashi
                         United States Magistrate Judge

ELIZARES v. PARKER, et al.; CIV. NO. 06-00465 HG-LEK; FINDINGS AND
RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS; dmp/Habeas 07/
ELIZARES 06-310 #2(hab proc.bar)

39